U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE                          2012 JUN -4  AM 11: 09
DISTRICT OF VERMONT
                                          CLERK

                                    BY ————————————
                                          DEPUTY CLERK

KRISTOPHER BALENTINE,              )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      Case No. 5:11-cv-196
                                   )
THOMAS TREMBLAY, JEFFREY WALLIN,   )
MAX SCHLEUTER, ANDREW PALLITO,     )
JANE DOES, and JOHN DOES,          )
                                   )
            Defendants.            )

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
### (Doc. 3)

This matter came before the court on the motion to dismiss (Doc. 3) filed by Defendants Thomas Tremblay, Jeffrey Wallin, Max Schleuter, and Andrew Pallito (collectively, "Defendants"). Plaintiff Kristopher Balentine, who is required to register as a sex offender in Vermont, contends that the risk designation assigned to him violated his constitutional rights to procedural due process, substantive due process, and equal protection. He seeks injunctive and declaratory relief, as well as compensatory damages, attorney's fees, and costs. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss each of Plaintiff's claims.

The court held oral argument on December 15, 2011. Thereafter, Plaintiff was permitted to amend his complaint and the parties were permitted to submit post-hearing briefs. The parties agreed that the pending motion to dismiss would be applied to the amended complaint. Defendants filed a post-hearing memorandum on January 18, 2012.

Plaintiff is represented by Brian R. Marsicovetere, Esq. Defendants are represented by Vermont Assistant Attorney General Jonathan T. Rose.

## I.    Factual and Procedural Background.

The following facts are derived from Plaintiff's First Amended Complaint. Plaintiff is a thirty-three-year-old married resident of Barre, Vermont with two children. Defendant Thomas Tremblay was at all relevant times the Commissioner of the Vermont Department of Public Safety ("VDPS"). Defendant Jeffrey Wallin has been the Director of the Vermont Criminal Information Center ("VCIC") since May 2010. Defendant Max Schleuter was the Director of the VCIC at all relevant times prior to his retirement on June 30, 2010. Defendant Andrew Pallito has been the Commissioner of the Vermont Department of Corrections ("VDOC") since his appointment on December 31, 2008.

In November 2003, Plaintiff, who was then twenty-one years or older, was convicted of third-degree rape in New York for sexual relations with a minor who was then fifteen. At the time of his conviction, Plaintiff was a Private in the United States Army and remained in that status, earning several medals, until October 2004, when he was honorably discharged. A representative from the Army wrote to the judge presiding over Plaintiff's sex offense case and stated that "there is ample evidence that [Plaintiff] was led to believe that the victim and her family not only presented her as being of legal age but also consented to the sexual relationship[.]" (Doc. 16 at ¶ 21.) Plaintiff received a probationary sentence.

In mid-2007, Plaintiff moved to Vermont. Shortly thereafter, VCIC sent him a letter dated June 5, 2007, directing him to register as a sex offender. The letter also instructed Plaintiff to contact the nearest Vermont State Police barracks for finger printing and photographing. Plaintiff subsequently registered and submitted to finger printing and photographing.

Vermont law requires notice to sex offenders that their information may be posted to Vermont's Online Sex Offender Registry (the "Online Registry"). It also provides sex offenders an opportunity to contest placement on the Online Registry and to undergo a risk assessment. Risk assessments are performed by VDOC's Sex Offender Review Committee, based upon a sex offender's conviction history, treatment status, and affidavits in the offender's file. Vermont law requires that "if the offender has not been

2

subject to a risk assessment," the Online Registry shall include "a statement that the offender has not been so assessed and that such a person is presumed to be high risk." 13 V.S.A. § 5411a(b)(12).

In 2010, without prior notice and without a risk assessment, Plaintiff's personal information, conviction, photograph, and a statement of his risk status were posted to the Online Registry. Because no risk assessment was conducted for Plaintiff, his Online Registry profile stated: "No Risk Assessment Available – Presume To Be High Risk to Re-Offend" ("Plaintiff's Risk Assessment"). Plaintiff alleges that he poses no risk to re-offend.

In February 2011, Plaintiff's employer, Kirby Vacuum, terminated his employment as a local salesman after Kirby personnel viewed Plaintiff's Risk Assessment on the Online Registry. In furtherance of his employment, Plaintiff had invested $14,000 in supplies and owed $1,400 in phone bills. He was forced to terminate his two-year lease of a Kirby store, leaving him $21,600 in debt to his landlord. In addition, his children's childcare provider no longer permitted him on site to pick up, drop off, or visit his children due to the Online Registry information.

Plaintiff's initial Complaint alleged three claims: (1) violation of procedural due process; (2) violation of substantive due process; and (3) defamation. At oral argument, the court granted Plaintiff's request to voluntarily dismiss all claims against Defendant Max Schleuter in his official capacity, his substantive due process claim against all Defendants in their individual capacities, and his claim for defamation.

On January 9, 2012, Plaintiff filed a First Amended Complaint that alleges four claims: (1) violation of procedural due process against Defendants in their individual capacities; (2) violation of procedural due process against Defendants in their official capacities; (3) violation of substantive due process against Defendants other than Defendant Schleuter in their official capacities; and (4) violation of equal protection against Defendants in their official capacities.

## II.    Conclusions of Law and Analysis.

### A. Standard of Review.

When assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court

assumes the complaint's "factual allegations to be true and draw[s] all reasonable

inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The

court need not credit "legal conclusions" in the complaint or "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Id.* at 72

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (internal quotation marks and

alteration omitted)). The court's analysis is confined "to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-*

*Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted).

"[O]nly a complaint that states a plausible claim for relief survives a motion to

dismiss. Determining whether a complaint states a plausible claim for relief [is] a

context-specific task that requires the reviewing court to draw on its judicial experience

and common sense." *Iqbal*, 556 U.S. at 679 (internal citation omitted). "When there are

well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement to relief." *Id.*; *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555-56 (2007).

### B. Leave to Amend to Include Plaintiff's Equal Protection Claim.

As a preliminary matter, Defendants ask the court to dismiss Plaintiff's equal

protection claim on the grounds that in seeking leave to amend at oral argument, Plaintiff

did not advise either the court or Defendants that he sought to add a new substantive

claim.

Pursuant to Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the

opposing party's written consent or the court's leave. The court should freely give leave

when justice so requires." The Second Circuit has held that a motion to amend should be

denied "only for such reasons as 'undue delay, bad faith, futility of the amendment, and

perhaps most important, the resulting prejudice to the opposing party.'" *Richardson*

4

*Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 653 n.6 (2d Cir. 1987) (quoting *State
Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981)).  Here, Defendants
do not contend that the addition of Plaintiff's equal protection claim results in any
prejudice to them, nor is there evidence of undue delay or bad faith.  Judicial economy
favors resolving the merits of the motion to dismiss now as opposed to in response to
subsequent motions.  Accordingly, the court hereby GRANTS Plaintiff leave to amend to
include his equal protection claim in his First Amended Complaint.

### C. Whether Qualified Immunity Requires Dismissal of Plaintiff's Procedural Due Process Claim Against Defendants in their Individual Capacities.

In Count One of his First Amended Complaint, Plaintiff alleges a procedural due
process claim against Defendants in their individual capacities.  He asserts that
Defendants Tremblay, Wallin, and Schleuter had a duty to provide him with notice and
an opportunity to be heard before posting his personal information, photograph, and Risk
Assessment to the Online Registry.  He further alleges that as a result of their failure to
provide notice and an opportunity to be heard, he was deprived of his right under
Vermont law to contest his placement on the Online Registry, as well as to contest the
Risk Assessment he received by default.  He alleges that Defendant Pallito had a duty to
ensure that Plaintiff received a risk assessment, and that all Defendants knew or should
have known that posting Plaintiff's Risk Assessment to the Online Registry, without an
actual risk assessment and notice and an opportunity to be heard, would result in the
public being falsely advised regarding the risk Plaintiff poses and would cause Plaintiff
injuries that cannot be redressed by mere removal of the information after the fact.
Plaintiff asserts he has a clearly established liberty interest in being free from government
stigmatization,[1] and that Defendants deprived him of that interest without procedural due
process.

---

[1] In his First Amended Complaint, Plaintiff alleges that as a result of Defendants' conduct, he has
"suffered public humiliation, damage to his reputation, loss of employment, personal
associations, and the benefits of liberty." (Doc. 16 at ¶ 47.)  In opposing Defendants' motion to
dismiss, he states that his procedural due process claims in Count One "are premised upon

In seeking dismissal of Count One, Defendants argue they are entitled to qualified immunity because, as a matter of law, Plaintiff cannot demonstrate that he was deprived of a clearly established constitutional right as a result of Defendants' actions.

When a government official is sued in his or her individual capacity, qualified immunity shields that official "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) ("A government official sued in his individual capacity is entitled to qualified immunity . . . if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred[.]").

Qualified immunity protects government officials from lawsuits over errors made while reasonably performing their duties, whether resulting from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As a result, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To determine whether a right is clearly established, courts in the Second Circuit look to "(1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have

---

alleged deprivations of a federally protected liberty interest—the right to be free from government stigmatization that alters a person's legal status." (Doc. 8 at 4.)

understood that his or her acts were unlawful." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010). This standard ensures that "all but the plainly incompetent or those who knowingly violate the law" will be protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).[2]

As Plaintiff points out, Vermont law entitled Plaintiff to certain procedural protections before his Risk Assessment and other information were posted to the Online Registry, including the right to contest his placement on the Online Registry, 13 V.S.A. § 5411a; the right to a risk assessment to determine whether he was a "high-risk" to re-offend; notice and an opportunity to be heard regarding that risk assessment if he disagreed with it; and the right to a de novo appeal before the Vermont Superior Court to contest a "high-risk" assessment. 13 V.S.A. § 5411b. Plaintiff argues that he was entitled to expect state officials to follow state law. While this establishes Defendants were acting or failing to act under the color of state law, it does not, alone, establish a violation of Plaintiff's constitutional rights unless Plaintiff can establish that he was deprived of a protected liberty or property interest. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Second Circuit has recognized a constitutional right to be free from a false stigmatizing statement that alters a person's legal status or rights. The protected interest is a narrow one and requires more than a derogatory public statement by a government official. *See Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) ("defamation is simply not enough to support a cognizable liberty interest."). As the Second Circuit held in *Vega v. Lantz*, 596 F.3d 77 (2d Cir. 2010):

---

[2] The standard does not mean that "an official action is protected by qualified immunity unless the very same action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Instead, the question is whether pre-existing law from this and other circuits provides officers with "fair warning" that the conduct in question is unlawful. *Id.*; *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (examining "whether the state of the law in 1995 gave respondents fair warning that their alleged treatment of [plaintiff] was unconstitutional"); *see also Scott*, 616 F.3d at 105 (explaining that courts may rely on precedent from other circuit courts of appeals in deciding whether a right is clearly established).

Generally, defamation is an issue of state, not of federal
constitutional, law. However, under limited circumstances, federal
constitutional relief is available for defamation committed by government
officials. Specifically, an action can be grounded in 42 U.S.C. § 1983 when
that plaintiff can demonstrate "a stigmatizing statement plus a deprivation
of a tangible interest."

To establish a "stigma plus" claim, a plaintiff must show (1) "the
utterance of a statement sufficiently derogatory to injure his or her
reputation, that is capable of being proved false, and that he or she claims is
false," and (2) "a material state-imposed burden or state-impose alteration
of the plaintiff's rights or status." This state-imposed alteration of status or
burden must be "in addition to the stigmatizing statement." Thus, even
where a plaintiff's allegations would be sufficient to demonstrate a
government-imposed stigma, such defamation is not, absent more, a
deprivation of a liberty or property interest protected by due process.

*Id.* at 81-82 (internal citations omitted). "Stigma plus" may be found where an inmate is
labeled mentally ill and transferred to a mental hospital without due process, *id.* at 81
(citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980)), or when an inmate is wrongfully
characterized as a sex offender when he or she is not. *Id.* at 81-82 (collecting cases).

Here, Plaintiff does not challenge his status as a sex offender and he has
voluntarily dismissed his defamation claim. Moreover, he does not so much claim that
his Risk Assessment contains a false statement as he contends that it creates a false
presumption that he is at a high risk to reoffend when he contends he is not.[3] These facts
are sufficient to take the present case out of the narrow exception recognized in *Vega*
which imposes "a threshold requirement—the existence of a reputation-tarnishing

---

[3] Plaintiff alleges that Defendants posted a "false statement about his risk status--that a risk
assessment was not available and the public should presume Mr. Balentine presents a high risk to
reoffend." (Doc. 16 at ¶ 44). He does not, however, contend that a risk assessment was in fact
available. (Doc. 16 at ¶¶ 30, 35). Consequently, the only allegedly false statement pertains to a
presumption regarding a potential risk which could neither be proved or disproved. *See Lee v.
Bankers Trust Co.*, 166 F.3d 540, 547 (2d Cir. 1999) ("Opinion cannot defame unless a
reasonable factfinder would conclude that the statement implies reasonable specific assertions of
fact.").

statement that is *false*," *id.* at 82, as well as a requirement that the statement be "capable of being proved false[.]" *Id.* at 81.

*Vega* further requires a plaintiff to establish that his or her legal status has changed beyond mere damage to his reputation. Plaintiff here does not cite any specific change in his legal status or rights beyond damages to his reputation and employment he suffered as a result of the posting. These are not "state-imposed" burdens such as required treatment, programming, or segregation that alter his legal rights or status. *See Vega*, 596 F.3d at 82. Because the facts of this case fall outside the "limited circumstances" recognized by *Vega*, the court cannot find Plaintiff has alleged a violation of a clearly established constitutional right based upon "stigma plus."

Plaintiff gains no further ground by arguing he was deprived of a liberty interest in his reputation as recognized by *Doe v. Conn. Dep't of Pub. Safety*, 271 F.3d 38 (2d Cir. 2001) ("*Doe I*"). In *Doe I*, the Second Circuit concluded that placement on Connecticut's sex offender registry without due process violated a liberty interest because it stigmatized "the people listed on it insofar as it assert[ed] they [were] persons convicted of crimes characterized by the State as sexual offenses," *id.* at 47, and "implies that each person listed is more likely than the average person to be currently dangerous." *Id.* at 49. As Plaintiff acknowledges, *Doe I* was reversed by the Supreme Court in *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003) ("*Doe II*"). In *Doe II*, the Supreme Court noted that "the public registry explicitly states that officials have not determined that any registrant is currently dangerous." *Id.* at 4. The Court did not resolve the issue of whether a listing in a sex offender registry would ever violate a liberty interest, observing that: "We find it unnecessary to reach this question, however, because even assuming, *arguendo*, that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute." *Id.* at 7.

Other than the narrow ruling in *Vega*, post *Doe II*, the Second Circuit has not addressed whether and when posting an individual's personal information and risk assessment on an online sex offender registry may violate a liberty or property interest. Four other circuits have found a liberty interest in a sex offender classification, although

9

only one of those decisions is post *Doe II* and it does not extend beyond a requirement that any such classification be accurate. *See Coleman v. Dretke*, 395 F.3d 216, 222 (5th Cir. 2004) (ruling that "prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions," and distinguishing *Doe II* as it addressed only individuals with sex offense convictions); *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (concluding that an inmate has a right to procedural due process before being classified as a sex offender); *Kirby v. Siegelman,* 195 F.3d 1285, 1292 (11th Cir. 1999) (holding the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty under the Due Process Clause); *Neal v. Shimoda,* 131 F.3d 818, 831 (9th Cir. 1997) (concluding that a state must provide a hearing before classifying a prisoner as a sex offender).

Two other circuits have reached a contrary conclusion. *See Grennier v. Frank,* 453 F.3d 442, 446 (7th Cir. 2006) (holding that a prisoner who was not convicted of a sex offense did not have a protected liberty interest in being free from sex offender classification, without citation to *Doe II*); *Gunderson v. Hvass,* 339 F.3d 639, 644 (8th Cir. 2003) (denying a prisoner's due process claim where he was required to register as a predatory offender even though he was not convicted of a predatory offense, without analysis of *Doe II*).

Where the law remains unsettled or there is a clear split of authority, a right cannot be deemed clearly established. *See McEvoy v. Spencer*, 124 F.3d 92, 105 (2d Cir. 1997) ("[Q]ualified immunity protects [defendants] in this case because . . . the law was unsettled at the time of the second demotion as to whether a policymaker exception was available[.]"); *Welch v. Chapman*, 2008 WL 544618, at *5 (E.D. Mich. Feb. 27, 2008) ("Given the dearth of authority within the Sixth Circuit to support a constitutional right not to be an informant, and the split of authority in other districts, it cannot be said that in June of 2006, such a right was clearly established."). Here, the Supreme Court has declined to resolve the question of whether and in what circumstances a person who is in fact a sex offender is nonetheless entitled to notice and an opportunity to be heard before

10

his or her information is placed on an online sex offender registry. Qualified immunity is thus available to shield Defendants from liability in their individual capacities for Plaintiff's procedural due process claim because the right claimed by Plaintiff is not clearly established. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

For the reasons stated above, the court hereby GRANTS Defendants' motion to dismiss Plaintiff's claim for monetary damages against Defendants as set forth in Count One of the First Amended Complaint.[4]

### D. Whether Plaintiff's Claim for Violation of Procedural Due Process by Defendants in Their Official Capacities Should be Dismissed.

In Count Two of his First Amended Complaint, Plaintiff alleges that Defendants in their official capacities violated his procedural due process rights by posting his personal information, photograph, and Risk Assessment before providing him notice and an opportunity to be heard. He seeks a declaratory judgment that "Defendants Tremblay, Wallin, Schleuter and Pallito violated his Fourteenth Amendment rights to procedural due process as alleged in Count I." (Doc. 16 at ¶ 49.) He seeks injunctive relief requiring VDPS to remove his personal information, photograph, and Risk Assessment from the Online Registry.

---

[4] Because the court does not dismiss Plaintiff's claims in their entirety, it does not at this time address Plaintiff's requests for declaratory and injunctive relief in Count One. It notes, however, that those claims for relief cannot stand alone. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) ("The DJA is procedural in nature, and merely offers an additional remedy to litigants.") (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action."); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.") (citation and internal quotation marks omitted).

Defendants ask the court to dismiss Count Two because Plaintiff has failed to establish a protected liberty interest and that any liberty interest alleged is not clearly established. They do not, however, address whether qualified immunity extends to Plaintiff's claims for prospective injunctive and declaratory relief. Instead, the fulcrum of their argument is that, at most, Plaintiff alleges Defendants engaged in random and unauthorized acts for which there are adequate postdeprivation remedies. On this basis, they claim they are entitled to judgment in their favor as a matter of law.

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). A claim based on random, unauthorized acts will not succeed if adequate postdeprivation remedies are available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("If negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state postdeprivation remedies are available."); *see also Catanzaro v. Weiden*, 140 F.3d 91, 97 (2d Cir. 1998) ("although notice and a predeprivation hearing are generally required, in certain circumstances, the lack of such predeprivation process will not offend the constitutional guarantee of due process, provided there is sufficient postdeprivation process.").[5]

Plaintiff contends that had he been provided with predeprivation notice and an opportunity to be heard, as well as a risk assessment, he would not have been placed on the Online Registry in the first instance because he had "successfully reintegrated into the

---

[5] Although Plaintiff cites *Zinermon v. Burch*, 494 U.S. 113 (1990) to support his procedural due process claim, that case is inapposite. In *Zinermon*, the Supreme Court considered the procedural due process claim of a plaintiff who was admitted to a state mental health treatment facility based on voluntary admission forms he signed while heavily medicated and disoriented. *Zinermon* addressed the inadequacies of the state's existing mental health procedures. Here, in contrast, Plaintiff asserts that the existing law provided adequate procedural safeguards, but contends those procedures were not followed in his case.

community." (Doc. 8 at 11.) Accordingly, Plaintiff's procedural due process claim against Defendants in their official capacities appears to challenge only the adequacy of Defendants' compliance with statutory procedures, not the procedures themselves. Because there is no claim that Defendants' acts and omissions were part of an authorized pattern or practice, the court need only consider whether adequate postdeprivation remedies were available. The court's ability to conduct this inquiry, however, is hampered by the parties' limited briefing of this issue. [6]

Plaintiff argues that he was entitled to a predeprivation notice and an opportunity to be heard and that he has "alleged irreparable harm which a post-deprivation administrative hearing cannot address." (Doc. 8 at 13). After chastising Defendants for introducing facts not before the court, he points to a recent study that found "a sizeable number of serious errors" in Vermont's administration of its Online Registry. (Doc. 8 at 14). He states, without further elaboration, that a postdeprivation remedy is not adequate because "Department remedies will not compensate damages" and "[a]ppeals can take over two years[.]" *Id.*

Defendants rely upon similar conclusory statements. They argue that, postdeprivation, Plaintiff could have demanded a risk assessment, could have written to the Director of VCIC who would then "conduct an investigation," (Doc. 3 at 10), and could have "appeal[ed] an adverse determination to the Commissioner of Public Safety."

---

[6] *See Jimmo v. Sebelius*, 2011 WL 5104355, at *22 n.13 (D. Vt. Oct. 5, 2011) (declining to address Secretary's motion to dismiss for failure to state a claim that was briefed in a "relatively cursory manner," was not adequately addressed at oral argument, and was not further pursued in the Secretary's subsequent briefing); *Ibarra v. City of Chicago*, 2011 WL 4583785, at *8 (N.D. Ill. Sept. 28, 2011) ("Given the complexity of the legal issues, the parties' cursory treatment of the issues, and the current stage of the litigation, the Court declines to dismiss Count II at this time."); *see also Allstate Ins. Co. v. Heil*, 2007 WL 4270355, at *2 n.2 (D. Haw. Dec. 6, 2007) ("Because the parties have not briefed the Rule 702 issue in anything more than a cursory way as part of their summary judgment arguments, the court declines to resolve the expert admissibility issues on the record before it.").

*Id.*[7] They do not claim, however, that they provided direct notice of these rights to Plaintiff, they do not further describe the nature of the investigation or appeal, and they do not explain how they would be adequate to address any reputational damage Plaintiff may have suffered.[8]

Because the nature and adequacy of postdeprivation remedies remains undetermined, Defendants have not sustained their burden of establishing that they are entitled to dismissal. The court thus DENIES WITHOUT PREJUDICE Defendants' motion to dismiss Count Two.

### E.  Whether Plaintiff's Substantive Due Process Claim Survives Rational Basis Review.

In Count Three of his First Amended Complaint, Plaintiff asserts a substantive due process challenge to the Vermont statute, 13 V.S.A. § 5411a(b)(12), which resulted in the

---

[7] In their post-hearing filing, Defendants refer to additional unspecified state law postdeprivation tort and judicial remedies, again, without any discussion of their adequacy. *See* Doc. 17 at 3-4 ("the deprivation alleged in the Complaint and the First Amended Complaint occurred because of a 'random and unauthorized' act by a state official and Plaintiff is therefore afforded all the process he is due by existing post-deprivation administrative and judicial (i.e. state tort law remedies")); Doc. 17 at 5 ("Accordingly, Plaintiff is afforded all the process he is due by the post-deprivation administrative and/or judicial remedies available to Plaintiff under state law and his procedural due process claim should be dismissed").

[8] The sheer breadth of the procedures the Vermont Legislature deemed necessary to prevent an erroneous posting to the Online Registry belies any claim that the harm Plaintiff alleges he suffered was trivial. Under Vermont law, after July 1, 2010, Plaintiff's information and status became eligible for posting on Vermont's Online Registry even though he was not under the supervision of VDOC. Prior to posting his information to the Online Registry, however, Plaintiff was entitled to notice of the right to petition for nonexclusion on the Online Registry and a stay of the posting of any of his information until a sex offender review committee ruled on his petition. 13 V.S.A. § 5411a. He was further entitled to a risk assessment by VDOC and to contest that risk assessment if he disagreed with it. 13 V.S.A. § 5411b(a)-(b). In the event VDOC had not performed a risk assessment, Plaintiff had the right to demand one be completed. 13 V.S.A. § 5411a(b)(12). The "high-risk" designation Plaintiff received by default carried with it its own predeprivation remedies. Because a "high-risk" designation is reserved by statute "for the purpose of identifying an offender as one who should be subject to increased public access to his or her status as a sex offender and related information, including Internet access," 13 V.S.A. § 5411b, a person receiving such a designation is entitled to de novo review of such designation by the Vermont Superior Court. 13 V.S.A. § 5411b(b).

posting of Plaintiff's default Risk Assessment to the Online Registry. He contends the State of Vermont has no legitimate interest in advising the public to presume a high risk based only upon the absence of a risk assessment and the presence of an eligible conviction. To redress the harm to his reputation, family associations, and employment he alleges he suffered, he seeks declaratory and injunctive relief.

Defendants move for dismissal of Plaintiff's claim, arguing that "the State plainly was entitled to conclude that where a sex offender has not been subjected to a formal risk assessment, legitimate concerns for public safety are served by informing the public of that fact and urging caution in dealing with the offender." (Doc. 9 at 5.) Defendants assert that the court must analyze the relevant statute under the rational basis test. Plaintiff, while conceding at oral argument that rational basis review is appropriate, nonetheless contends that the statute deprived him of a fundamental right which requires the statute to be examined with strict scrutiny. Accordingly, the court must first determine whether a suspect class or fundamental right is at issue because "[l]egislative acts that do not interfere with fundamental rights or single out suspect classifications carry with them a strong presumption of constitutionality and must be upheld if 'rationally related to a legitimate state interest.'" *Beatie v. City of New York,* 123 F.3d 707, 711 (2d Cir. 1997) (quoting *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440 (1985)).

In this case, Plaintiff does not claim that he is a member of a suspect class, nor could he reasonably do so. *See Houston v. Williams*, 547 F.3d 1357, 1364 (11th Cir. 2008) (stating that plaintiff, a sex offender and convicted felon, "does not claim to be a member of a suspect class"); *Does v. Munoz*, 507 F.3d 961, 966 (6th Cir. 2007) (concluding that sex offender plaintiffs "are not members of a suspect class"); *Artway v. Attorney Gen. of New Jersey*, 81 F.3d 1235, 1267 (3d Cir. 1996) (concluding that "[t]he challenged category – 'repetitive and compulsive sex offenders' – is not a suspect or quasi-suspect class" for purposes of due process analysis). He does, however, assert that he was deprived of a fundamental right, claiming that he and other sex offenders have a "fundamental right to be free from being publicly labeled by the government as a high

15

risk to reoffend based on nothing other than the absence of a risk assessment and [the] fact of a registry eligible conviction." (Doc. 16 at ¶ 53.)

In analyzing a substantive due process claim where a fundamental right is alleged to have been violated, the court must first set forth a "careful description of the asserted right" because "'[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" *Reno v. Flores*, 507 U.S. 292, 302 (1993) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Here, the court accepts Plaintiff's characterization of the alleged right as a liberty interest in freedom from publication of a stigmatizing government presumption of high risk to reoffend based only upon his status as an eligible sex offender whose risk to reoffend has not been evaluated.

The court must next determine whether the asserted right is one of "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). The Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain liberty and privacy interests such as "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Glucksberg*, 521 U.S. at 720. It has, however, cautioned that it has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.*[9]  If the court finds a fundamental right, it must still consider whether the

---

[9] To that end, the Court has concluded that a right to be free of law enforcement's distribution of a flyer containing a suspected shoplifter's name and mug shot when that individual had not been convicted, but had only been arrested and charged (a charge that was later dismissed) was "far afield" of the Court's decisions limiting a state's power to regulate private conduct. *Paul v. Davis*, 424 U.S. 693, 713 (1976).

statute in question directly or unduly burdens the exercise of that right. *See Maher v. Roe*, 432 U.S. 464, 473-74 (1977).

In the case of placement on a sex offender registry, regardless of how the right has been characterized, courts have concluded that it is not a fundamental one. *See Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 500-01 (6th Cir. 2007) (finding no fundamental right in Michigan's sex offender registry's disclosure of youthful trainee information and label of "currently dangerous sex offender" although plaintiffs had not been convicted of a crime and thus registry "in fact discloses information about the plaintiffs that is not entirely accurate" and includes information that is not otherwise publicly available); *Doe v. Moore*, 410 F.3d 1337, 1343-44 (11th Cir. 2005) (claim that Florida's Sex Offender Act infringed upon the right to family association, right to be free of threats, right to be free from interference with religious practices, and right to find and maintain housing and employment did not allege a violation of a fundamental right and noting that "Supreme Court . . . has not created a broad category where any alleged infringement on privacy and liberty will be subject to substantive due process protection." ); *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam) ("Persons who have been convicted of serious sex offenses do not have a fundamental right to be free from . . . registration and notification requirements[.]"); *Gunderson*, 339 F.3d at 643 (sex offender registration statute did not infringe upon the fundamental right to a presumption of innocence); *Paul P. v. Verniero*, 170 F.3d 396, 405 (3d Cir. 1999) (holding that indirect effects of sex offender registration on fundamental right of family relationships did not "fall within the penumbra of constitutional privacy protection"); *Doe v. Nebraska*, 734 F. Supp. 2d 882, 928, 929 (D. Neb. 2010) (rejecting fundamental right claim based upon, among other things, argument that "[l]abeling a non-dangerous registrant as high risk to reoffend intrudes on matters of personal choice as related to marriage and family life" and upon right to travel).

Here, the court similarly finds that Plaintiff has no fundamental right to be free of a statutory presumption that he is at a high risk to reoffend where such presumption is based only upon the truthful information that he has been convicted of a statutorily

17

designated sex offense and has not submitted to a risk assessment. In doing so, it finds the Eleventh Circuit's approach persuasive:

> Though the Supreme Court has not addressed whether substantive due process invalidates sex offender registration statutes, see *Connecticut Dep't of Public Safety*, 538 U.S. at 8, 123 S. Ct. at 1165, we can find no history or tradition that would elevate the issue here to a fundamental right. In fact, the case law we have found supports the contrary conclusion. We can certainly understand how a person may be shunned by a person or group that discovers his past offense. However, a state's publication of truthful information that is already available to the public does not infringe the fundamental constitutional rights of liberty and privacy. Therefore, we do not review the statute with strict scrutiny, but only under a rational basis standard.

*Moore*, 410 F.3d at 1345.

Having determined that Vermont's default risk assessment statute does not implicate a suspect class or a fundamental right, the court must examine whether it survives rational basis review. Contrary to Plaintiff's suggestion, discovery is not a necessary predicate for this determination as the court considers only whether there is "any reasonably conceivable state of facts that could provide a rational basis" for the legislation, *Heller*, 509 U.S. at 320, and thus its analysis does not depend on the specific intent of the Vermont legislature in drafting this legislation. *See Nguyen v. Immigration and Naturalization Serv.*, 533 U.S. 53, 75-76 (2001) ("Under rational basis review, by contrast, it is "'constitutionally irrelevant [what] reasoning in fact underlay the legislative decision.'") (citations omitted). Indeed, even with evidence of actual legislative intent that appears to be misguided, courts must assume that "the democratic process" will eventually remedy "improvident legislative choices" rendering judicial intervention "generally unwarranted[.]" *Beatie*, 123 F.3d at 712. Consequently, a court's authority to intervene and invalidate a statute subject to rational basis review is limited to those "extraordinary circumstances where it can only be concluded that the legislature's actions were irrational." *Id.*

Rational basis review is thus a deferential standard, *Plyler v. Doe*, 457 U.S. 202, 216 (1982), and "[a] statute is presumed constitutional." *Heller v. Doe*, 509 U.S. 312,

320 (1993) (internal quotations and citations omitted).  Indeed, in a facial challenge, there must be "no set of circumstances . . . under which [the statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008) (applying *Salerno* standard in evaluating facial constitutional challenge).

In accordance with rational basis review, "[s]o long as they do not burden fundamental rights or single out suspect classifications, lawmakers are free to engage in 'rational speculation unsupported by evidence.'" *Beatie*, 123 F.3d at 712 (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993)).  "Moreover, it is not the state that must carry the burden to establish the public need for the law being challenged; it is up to those who attack the law to demonstrate that there is no rational connection between the challenged [law] and the promotion of public health[,] safety and welfare." *Beatie*, 123 F.3d at 712; *see also Heller*, 509 U.S. at 320-21 ("[the] burden is on the one attacking [the law] to negative every conceivable basis which might support it . . . whether or not the basis has a foundation in the record.").

The statute at issue here easily withstands rational basis review.  Protecting the public from unknown risks associated with convicted sex offenders whose risk to reoffend has not been evaluated is a legitimate government interest in public safety.  *See Moore*, 410 F.3d at 1345 ("It has long been in the interest of government to protect its citizens from criminal activity and we find no exceptional circumstances in this case to invalidate the law."); *see also Local 32B-32J, Serv. Emp. Int'l Union v. Port Authority of New York and New Jersey*, 3 F. Supp. 2d 413, 420 (S.D.N.Y. 1998) ("public safety . . . [is] unquestionably [a] legitimate governmental concern[]").  The default statement of risk required by the Vermont statute bears a rational relationship to that interest because it applies only to those with a registered sex offense and because it clearly states that it is based upon the absence of information and the presumption of a risk, rather than an actual assessment of the risk.  Plaintiff may be correct that a default risk assessment which merely states the risk is unknown would accomplish the same objective.  However, the possibility of better drafting or a more equitable balancing of competing interests does not invalidate a statute under rational basis review.  *See New Orleans v.*

*Dukes,* 427 U.S. 297, 303 (1976) (per curiam) (rational basis review does not authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."). To the contrary, "[w]here . . . there are plausible reasons for [legislative] action, our inquiry is at an end." *U.S. R.R. Ret. Bd. v. Fritz,* 449 U.S. 166, 179 (1980).

Because Plaintiff has not and cannot sustain his burden of establishing that Vermont's default risk assessment, as set forth in 13 V.S.A. § 5411a(b)(12), serves no legitimate government purpose, Plaintiff's facial substantive due process challenge to it must fail. The court therefore GRANTS Defendants' motion to dismiss Count Three.

### F. Whether Plaintiff's Claim for Violation of Equal Protection by Defendants in Their Official Capacity Also Fails Under Rational Basis Review.

Count Four of Plaintiff's First Amended Complaint alleges a violation of equal protection against Defendants in their official capacities and seeks declaratory and injunctive relief. As the factual and legal basis for this claim, Plaintiff asserts that 13 V.S.A. § 5411a(b)(12) violates equal protection "because it treats sex offenders who have had a risk assessment differently from those who have not by requiring [VDPS] to inform the public that an offender who has not had a risk assessment should be presumed a high risk to reoffend." (Doc. 16 at ¶ 57.) Plaintiff has not filed a memorandum in opposition to Defendants' motion to dismiss this claim.

In seeking dismissal of Count Four, Defendants point out that the alleged classification serves a legitimate government interest in identifying those registered sex offenders whose risk to reoffend has not yet been assessed, and warning of a greater risk that may be associated with them than is associated with sex offenders who have been evaluated for this purpose. *See United States v. Juvenile Male,* 670 F.3d 999, 1009 (9th Cir. 2012) (concluding that sex offender registry requirement did not violate equal protection because "protecting our communities is a legitimate legislative purpose," to which the statute was rationally related). Defendants further contend that in the absence

of a suspect classification or a fundamental right, the court's inquiry is limited to rational basis review.

"[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller*, 509 U.S. at 319. "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 320. The Second Circuit has previously rejected all of the challenges which Plaintiff makes or could make with regard to the classification at issue here:

> Thus, it may be seen that today it is very difficult to overcome the strong presumption of rationality that attaches to a statute. We will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, *Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 50 [ ] (1966), because the problem could have been better addressed in some other way, *Mourning [v. Family Publications Serv., Inc.,]* 411 U.S. [356], 378 [(1973)] or because the statute's classifications lack razor-sharp precision, *Dandridge [v. Williams*, 397 U.S. 471, 484-]485 [(1970)]. Nor will a statute be overturned on the basis that no empirical evidence supports the assumptions underlying the legislative choice. *Vance [v. Bradley]*, 440 U.S. [93], 110-11 [(1979)]. To succeed on a claim such as this, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* at 111 [].

> So long as they do not burden fundamental rights or single out suspect classifications, lawmakers are free to engage in "rational speculation unsupported by evidence." *Beach Communications*, 508 U.S. at 315[.]

*Beatie*, 123 F.3d at 712. As for Plaintiff's claim that the criteria used to determine the default risk assessment are insufficient, a legislative body need not "await concrete proof of reasonable but unproven assumptions before acting to safeguard the [safety] of its citizens." *Id.* at 713.

Because the Plaintiff cannot establish that the Vermont legislature has adopted a classification in 13 V.S.A. § 5411a(b)(12) that is irrational and untethered to a legitimate government interest, dismissal of Count Four is appropriate.

## CONCLUSION

For the reasons stated above, the court hereby GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss the First Amended Complaint (Doc. 3). SO ORDERED.

Dated at Rutland, in the District of Vermont, this 4th day of June, 2012.

Christina Reiss, Chief Judge
United States District Court